*Judge Hellerstein*

08 CV 3831

204-08/ROSS
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff MARITRANS, S.A.
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax

James L. Ross (JR 6411)



RECEIVED
APR 23 2008
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
MARITRANS, S.A.,

                              Plaintiff,

   -against-

HARVESTER SHIPMANAGEMENT LTD.,

                             Defendant.
---------------------------------------------------------------x

**08 CIV**

**VERIFIED COMPLAINT**

      Plaintiff MARITRANS, S.A. (hereinafter "MARITRANS"), by its attorneys Freehill, Hogan & Mahar, LLP, as and for its Verified Complaint against the Defendant HARVESTER SHIPMANAGEMENT LTD. (hereinafter "HARVESTER") alleges upon information and belief as follows:

      1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract of charter party. This case also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333, and this Court's federal question jurisdiction pursuant to 28 U.S.C. §1331 in that the action arises under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, codified at 9 U.S.C. §201 *et seq.* and/or the Federal Arbitration Act, 9 U.S.C. §1 *et seq.*

2.  At all times relevant hereto, MARITRANS was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an office at 80 Broad Street, Monrovia, Liberia.

3.  At all times relevant hereto, HARVESTER was and still is a foreign business entity duly organized and existing under the laws of a foreign country, with an office and place of business at Agias Sofias, 94B, P.C. 3066, Limassol, Cyprus.

4.  On or about August 24, 2007, MARITRANS, as disponent owner of the vessel AKTI II, entered into a maritime contract of charter party ("C/P") with HARVESTER, as charterer, under which MARITRANS agreed to let and HARVESTER agreed to charter the vessel AKTI II for one voyage from Novorossiysk, Russia to Santos, Brazil. A true and correct copy of the C/P is attached as Exhibit A.

5.  Pursuant to the terms of the C/P, HAVESTER, as charterer, was required to load and discharge the cargo free of risk and expense to MARITRANS (Exh. A, Clause 49).

6.  The AKTI II was delivered into the service of HARVESTER pursuant to the C/P and loaded a bulk cargo of 26,439 M.T. ammonium nitrate at Novorossiysk between September 14 and September 24, 2007.

7.  After completion of loading the cargo on September 24, 2007, the AKTI II sailed from Novorossiysk to Santos, Brazil.

8.  The AKTI II arrived at the intended discharge port of Santos on October 21, 2007, and discharging of the cargo commenced on October 22nd (0800 HRS).

9.  Discharging of the cargo at Santos continued until October 28, 2007, at which time attending surveyors discovered a small quantity of the cargo in hold #5 was apparently contaminated.

10. The discharge of all cargo in sound condition continued in Santos until October 30, 2007, at which time HARVESTER refused to continue discharging and abandoned the cargo on board. The vessel was then shifted from the discharging berth to anchorage.

11. After waiting at anchorage near Santos, the vessel was diverted to discharge the affected cargo at Montevideo, Uruguay.

12. The vessel departed Santos and arrived at Montevideo for the purpose of discharging the remaining cargo on board. However, the Uruguay authorities would not allow discharge of the contaminated cargo at Montevideo.

13. As a result of the HARVESTER's breach of the C/P by refusing to discharge and by abandoning the cargo on board, MARITRANS had to explore other options for discharging the cargo.

14. MARITRANS arranged to have the vessel sail back to Brazil where the balance of cargo was finally discharged at the Port of Antonina, Brazil on December 21, 2007.

15. The total time lost for the vessel from October 30, 2007 (2253 hours) when the vessel unberthed at Santos, until December 21 (2000 hours) when the vessel sailed from Antonina was 51.88 days.

16. The lost time of 51.88 days at U.S. $49,244 per day [the prevailing time charter equivalent rate] amounts to a loss of $2,554,779 for MARITRANS.

17. In addition, the vessel had to consume additional bunkers in conjunction with her transiting from Brazil to Uruguay and back to Brazil. This additional bunker consumption resulted in MARITRANS having to incur $268,030 in additional fuel costs.

18. In addition, disbursements totaling $41,331 had been incurred in Uruguay and Antonina, Brazil which would not have been incurred but for the breach of the C/P by HARVESTER.

19. In addition, MARITRANS had to incur consultant fees and expenses totaling $34,740 at Santos and Uruguay resulting from the breach of the C/P by HARVESTER.

20. As HARVESTER refused to discharge or salvage the cargo remaining on board, MARITRANS arranged a salvage sale of the cargo for the sum of $126,140, which amount has been credited against the damages now being claimed by MARITRANS against HARVESTER.

21. The C/P provides that any dispute arising thereunder shall be subject to London arbitration with the application of English law, and the right to have the substantive aspects of this matter determined in London arbitration is reserved (Exh. A, Clause 34).

22. Under English law, including but not limited to Section 63 of the English Arbitration Act of 1996, costs including attorney fees, arbitrator's fees, disbursements and interest are recoverable as items of claims in arbitration.

23. Plaintiff's anticipated attorney fees and costs recoverable in the London arbitration, including costs of the Tribunal, are estimated to be $750,000, plus interest as outlined below estimated to be $679,321, computed at an annual rate of 7.0% for the estimated time until entry of an award in 3 ½ years.

## RULE B MARITIME ATTACHMENT

24. This action is brought in order to obtain security in favor of Plaintiff in respect to Plaintiff's claims against Defendant HARVESTER which are subject to arbitration in London pursuant to English law. This action is further brought to obtain security for any additional sums

to cover Plaintiff's anticipated attorneys' fees and costs in the arbitration as well as interest, all of which are recoverable under English law.

25. Upon information and belief, and after investigation, HARVESTER cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but MARITRANS is informed that HARVESTER has, or will shortly have, assets within this District comprising of, *inter alia*, cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of HARVESTER (hereinafter "ASSETS"), moving through banking institutions including but not limited to ABN Amro, American Express Bank, Atlantic Bank, BNP Paribas, Bank of America, Citibank NA, Deutsche Bank Trust Co., HSBC, HSBC USA Bank NA, JP Morgan Chase Bank, Standard Chartered Bank, The Bank of New York, Wachovia, or others.

26. MARITRANS estimates, as nearly as can be computed, the total amount of Plaintiff's claims which is sought to be attached pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims by Plaintiff against Defendant totals **$4,202,061.00**.

27. The total amount of Plaintiff's claim sought to be attached pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims by MARITARNS against Defendant HARVESTER include:

(a) loss of time or detention of the vessel for 51.88 days in the sum of $2,554,779; plus

(b) cost of additional fuel in conjunction with the vessel transiting from Brazil to Uruguay and back to Brazil in the sum of $268,030; plus

(c) disbursements incurred at Uruguay and Antonina, Brazil in the sum of $41,331; plus

(d) consultant fees and expenses incurred at Santos and Uruguay in the sum of $34,740; plus

(e) interest in the amount of $679,321 calculated in the sum of $2,772,740[1] as shown in items (a) through (d) above, at the rate of 7% per annum for three and a half years, the estimated time it will take to obtain a final arbitration award, which interest is recoverable under English law; and

(f) estimated arbitration costs, including legal fees relating to the London arbitration and costs of the Tribunal, which are recoverable under English law in the amount of $750,000;

For a total claimed amount sought to be attached of **$4,202,061.00.**

WHEREFORE, Plaintiff prays:

a. That process in due form of law according to the practice of this Court may issue against Defendant HARVESTER, citing it to appear and answer the foregoing;

b. That since Defendant cannot be found within this District pursuant to Supplemental Rule B, that all assets of Defendant up to and including the sum of **$4,202,061.00** limited to any cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire, sub-charter hire, and/or other assets of, belonging to, due or for the benefit of Defendant including but not limited to such assets as may be held, received or transferred in its own name or as may be held, received or transferred for its benefit at, moving

---

[1] Plaintiff has deducted from the total sum to be attached the amount of $126,140, which represents the salvage value Plaintiff received for the remaining cargo.

NYDOCS1/302808.1               6

through, or within the possession, custody or control of banking institutions including but not limited to: ABN Amro, American Express Bank, Atlantic Bank, BNP Paribas, Bank of America, Citibank NA, Deutsche Bank Trust Co., HSBC, HSBC USA Bank NA, JPMorgan Chase Bank, Standard Chartered Bank, The Bank of New York, Wachovia, and/or any other garnishee(s) upon whom a copy of the Process of Maritime Attachment and Garnishment issued in this action may be served;

c. That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary in order to give effect to the London arbitration; and

d. For such other, further and different relief as this Court may deem just and proper in the premises.

Dated: New York, New York
April 23, 2008

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff MARITRANS S.A.

By: _____
James L. Ross (JR 6411)
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax

## ATTORNEY VERIFICATION

State of New York  )
                   ) ss.:
County of New York )

JAMES L. ROSS, being duly sworn, deposes and says as follows:

1. I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2. The sources of my information and the grounds for my belief are communications, information and documentation provided by our client.

3. The reason this verification is made by an attorney and not by the Plaintiffs are because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

*[signature]*
JAMES L. ROSS

Sworn to before me this
23RD day of APRIL 2008

*[signature]*
Notary Public

MELISSA COLFORD
Commissioner of Deeds
City of New York-No. 5-1692
Certificate Filed in New York
Commission Expires 4/1/10